```
                   UNITED STATES DISTRICT COURT
                    DISTRICT OF MASSACHUSETTS
```

```
_____
                                     )
LABRYS FUND, L.P.,                   )
                                     )
                  Plaintiff,         )
                                     )    Civil Action
           v.                        )    No. 19-12477-PBS
                                     )
ANVIA HOLDINGS CORPORATION,          )
                                     )
                  Defendant.         )
_____)
```

**MEMORANDUM & ORDER**

April 27, 2020

Saris, D.J.

**INTRODUCTION**

This case involves a loan which Plaintiff Labrys Fund issued to Defendant Anvia Holdings Corporation in exchange for a secured convertible promissory note ("Note") with a principal of $2,000,000. Labrys alleges Anvia failed to make payments on the Note and, as of December 6, 2019, owes $1,975,000 of the principal and $95,712.32 in interest. Labrys seeks a total of $2,070,712.32, plus attorneys' fees and costs.

Defendant does not dispute that it failed to make payments but argues that the Note's choice of Nevada law is invalid and public policy demands an application of Massachusetts usury law.

1

Defendant further contends that the effective interest rate constitutes an unenforceable penalty.

**FACTUAL BACKGROUND**

I. **Promissory Note and Breach**

The following facts are undisputed except where otherwise stated.

On June 4, 2019, Defendant signed a promissory note payable to Plaintiff for $2,000,000. Section 4.6 states: "This Note shall be governed by and construed in accordance with the laws of the State of Nevada without regard to principles of conflicts of laws." Dkt. No. 3 at 26.

The Note provides that Anvia is required to pay 10% interest on the unpaid principal balance per annum from the issue date of June 4, 2019 until the principal becomes due. In addition, any amount of the principal not paid when due accrues interest of the lesser of "(i) twenty-four percent (24%) per annum or (ii) the maximum amount allowed by law from the due date thereof until the same is paid (the "Default Interest")." Id. at 1.

The Note further provides that in the event of default, the borrower must pay "an amount equal to (i) 150% . . . times the sum of (w) the then outstanding principal amount of this Note plus (x) accrued and unpaid interest on the unpaid principal amount of this Note to the date of payment . . . plus (z)

2

[certain stock of the borrower]" plus other amounts including "legal fees and expenses" and an additional $15,000 added to the outstanding principal if the Note "is not paid at the Maturity Date." Id. at 23.

On July 22, 2019, the parties amended the Note to require Anvia to submit monthly payments of $350,000. Anvia made a payment of $25,000 on August 20, 2019 and no further payments.

Labrys alleges that Anvia breached the Note because it failed to make monthly payments and because it did not repay the amount by the extended deadline of December 6, 2019. Labrys also alleges that Anvia's failure to meet Security and Exchange Commission filing deadlines constituted another breach of the agreement. Anvia admits to missing filing deadlines but adds that it is now current with its obligations, presumably with the SEC.

## STANDARD OF REVIEW

Rule 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). "[T]he court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences" in favor of the nonmovant. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 182 (1st Cir. 2006). "[A] court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish

3

the movant's entitlement to a favorable judgment." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006). Unlike a Rule 12(b)(6) motion, a Rule 12(c) motion "implicates the pleadings as a whole." Id. at 55.

## DISCUSSION

### I. Choice of Law

The threshold question for the Court is whether the Note's choice of Nevada law is valid and, if not, whether to apply the law of Massachusetts or New Jersey.

A federal court of Massachusetts applies Massachusetts' choice of law principles to determine the applicable state law. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941). Massachusetts courts first assess whether the choice of law will affect the legal result. Auctus Fund, LLC v. Sunstock, Inc., 405 F. Supp. 3d 218, 226 (D. Mass. 2019). Here, the choice does affect the result. Nevada law does not allow corporations to raise a usury defense, while New Jersey law applies a 50% usury threshold, and Massachusetts law sets a 20% limit, with limited exceptions. Compare Nev. Rev. Stat. § 99.050 (2019), with N.J. Rev. Stat. § 2C:21-19 (2010), and Mass. Gen. Laws ch. 271, § 49(a).

Generally, Massachusetts courts enforce choice-of-law agreements unless

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and [is the State whose law would apply] in the absence of an effective choice of law by the parties.

The Restatement (Second) of Conflict of Laws § 187(2) (1971); see, e.g., Oxford Glob. Res., LLC v. Hernandez, 106 N.E.3d 556, 564 (Mass. 2018). The choice of Nevada law fails on both grounds, as discussed below.

**A. Substantial Relationship or Reasonable Basis**

A choice of law agreement may have a reasonable basis if the parties chose the law of the state "where one of the parties is domiciled or has [its] principal place of business"; "where performance by one of the parties is to take place"; or "the place of contracting." Restatement (Second) of Conflict of Laws § 187 cmt. f; Auctus Fund, 405 F. Supp. 3d at 222 (holding clause invalid where "Nevada has nothing to do with the[] contracts"). This Court has previously held that avoiding a state's usury law is not a reasonable basis for a choice of law agreement. See id. at 228.

Plaintiff argues the parties are familiar with Nevada law and chose that state in order to "settle the usury issue so that Labrys could mitigate its risk." Dkt. No. 21 at 4. However,

5

neither party is domiciled or has its principal place of business in Nevada, and the contract was neither signed nor performed in that state. In addition, Plaintiff's justification for Nevada law, risk mitigation, seems to be a means of avoiding usury law in the states with the closest relationship to the parties. Plaintiff has not explained why the parties would be unfamiliar with the laws of Massachusetts or New Jersey. The Note's choice of Nevada law is invalid because it has no reasonable basis.

**B. Fundamental Public Policy**

Even if there was a reasonable basis for choosing Nevada law, the choice would fail the second prong of the Restatement § 187(2) analysis. Courts decline to apply a choice of law provision if it is (1) contrary to the fundamental public policy of a state which (2) has a materially greater interest in the determination of the particular issue and (3) is the state whose law would apply absent a choice by the parties. Restatement (Second) of Conflict of Laws § 187(2) (1971); Optos, Inc. v. Topcon Med. Sys., Inc., 777 F. Supp. 2d 217, 229 (D. Mass. 2011).

*1. Applying Nevada law here is contrary to the fundamental public policy of New Jersey*

"New Jersey has a specific interest in protecting its residents from out-of-state lenders who seek to lend money to

New Jersey residents on terms which are usurious under New Jersey law." Dopp v. Yari, 927 F. Supp. 814, 818 (D.N.J. 1996) (citing Oxford Consumer Discount Co. of No. Phila. v. Stefanelli, 246 A.2d 460 (N.J. Super. Ct. App. Div. 1968)).

Conversely, the interests of Massachusetts are less strong where the Massachusetts party is a lender, rather than a debtor. See Auctus Fund, 405 F. Supp. 3d at 230 ("Massachusetts does not seem to have a strong public policy promoting or prohibiting [a Massachusetts-based entity] from arranging these deals with entities outside of the Commonwealth."); see also Greenwood Tr. Co. v. Massachusetts, 776 F. Supp. 21, 41-42 (D. Mass. 1991), rev'd on other grounds, 971 F.2d 818 (1st Cir. 1992) (holding that Massachusetts usury law reflects a fundamental public policy of protecting the state's debtors).

  2. *New Jersey has a materially greater interest than Nevada in the usury law applied here*

To determine which state has the greatest interest in the determination of a particular issue, Massachusetts courts balance the interests or policies of the states. See Hodas v. Morin, 814 N.E.2d 320, 325-26 (Mass. 2004). Both New Jersey and Massachusetts have a materially greater interest than Nevada in the application of usury law in this case, because the parties are headquartered in those states.

7

*3. New Jersey law would apply absent a choice by the parties*

To assess which state's law would apply absent the parties' choice, Massachusetts courts have adopted a "functional" approach, which turns on "the interests of the parties, the States involved, and the interstate system as a whole." Bushkin Assocs. v. Raytheon Co., 473 N.E.2d 662, 668 (Mass. 1985). The court may evaluate:

> (a) the place of contracting,
> (b) the place of negotiation of the contract,
> (c) the place of performance,
> (d) the location of the subject matter of the contract, and
> (e) the domicil, residence, nationality, place of incorporation[1] and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188(2) (1971); see also Bushkin Assocs., 473 473 N.E.2d at 658. Courts also assess the following:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,

---

[1] The place of incorporation is generally less important than the principle place of business. Auctus Fund, 405 F. Supp. 3d at 230 ("[N]othing in the contract or complaint indicates that Delaware has an interest in the dispute."); see also Restatement § 188 cmt. 2(e) ("[A] corporation's principal place of business is a more important contact than the place of incorporation."). Here, both parties were incorporated in Delaware, but that state has no interest in the Note. Therefore, the relevant choice is between New Jersey and Massachusetts.

>        (f) certainty, predictability and uniformity of
>        result, and
>        (g) ease in the determination and application of the
>        law to be applied.

Restatement (Second) of Conflict of Laws § 6(2); see, e.g., Optos, Inc., 777 F. Supp. 2d at 229 & n.7.

The Plaintiff's principal place of business is Massachusetts and the Note was drafted and executed in Massachusetts. The defendant is headquartered in New Jersey. Both Massachusetts and New Jersey usury laws serve the policies underlying usury protections, provide similar ease in application, and serve the needs of the interstate system.

However, New Jersey has a relatively stronger interest in the application of its usury law here, because the debtor is a New Jersey corporation. Compare Dopp v. Yari, 927 F. Supp. 814, 818 (D.N.J. 1996), with Auctus Fund, 405 F. Supp. 3d at 230. Absent a valid choice by the parties, New Jersey law applies here.

## II. Enforceability of the Interest Rate

The Defendant argues that the interest rate demanded by Labrys constitutes an unenforceable penalty. Plaintiff responds that the requested amount is reasonable and enforceable.

Under New Jersey law, an interest rate need not be usurious to constitute an unenforceable penalty. New Jersey courts use a reasonableness standard to determine the enforceability of default interest rates. MetLife Capital Fin. Corp. v. Washington

9

Ave. Assocs., 732 A.2d 493, 501 (N.J. 1999). A default interest rate "negotiated between sophisticated commercial entities is presumptively reasonable," and the party challenging the rate bears the burden of proving its unreasonableness. Id. at 496, 502. To determine whether a default interest rate is unreasonable, New Jersey courts consider "the difficulty in assessing damages, intention of the parties, the actual damages sustained, and the bargaining power of the parties," as well as "the potential costs of administering a defaulted loan," including the costs of "collection activity." Id. at 495, 501-503 (citations omitted). The enforceability of a default interest rate is often determined after the presentation of evidence on the above factors. See, e.g., id. at 490, 501 (holding default interest rate enforceable where lower court held evidentiary hearing); Westmark Commercial Mortg. Fund IV v. Teenform Assocs., L.P., 827 A.2d 1154, 1157 (N.J. Super. Ct. App. Div. 2003) (holding court had no basis to conclude that the default interest rate was unenforceable, given the "defendants' total failure to present" evidence).

"New Jersey cases have invalidated enhanced default rates if their size suggests a punitive intent." MetLife, 732 A.2d at 502 (upholding as reasonable 3% default rate increase to 12.55%); Stuchin v. Kasirer, 568 A.2d 907, 912 (N.J. Super. Ct. App. Div. 1990) (remanding to determine reasonableness of 15%

10

increase); Spiotta v. Wilson, 179 A.2d 49, 53 (N.J. Super. Ct. App. Div. 1962) (invalidating 8.58% increase to 38.76% default interest); Feller v. Architects Display Buildings, Inc., 148 A.2d 634, 639 (N.J. Super. Ct. App. Div. 1959) (invalidating 15.87% increase to 32.87% default interest). Cf. Mony Life Ins. Co. v. Paramus Parkway Bldg., Ltd., 834 A.2d 475, 483 (N.J. Super. Ct. App. Div. 2003) (holding 6% increase reasonable given $5 million principal and defendant's history of default).

Here, the Note initially provides for a 10% interest rate, which increases to 24% for any portion of the principal that is not paid when due. The Note also provides that, in the event of a default, the borrower is immediately liable for the unpaid principal and interest multiplied by 150%, with a principal increase of $15,000 when the loan reaches maturity.[2] The parties' briefs did not discuss the validity of the latter provisions, but the Court considers the Note as written.

---

[2] It is unclear whether the $200,000 "original issue discount" and the $15,000 charged in the event of default also constitute interest. Compare Spiotta, 179 A.2d at 52 (holding that $13,000 loan "bonus" was interest, because it "did not represent a charge for some service provided by plaintiff, or finance charges," but was "a sum extracted from the company for the use of plaintiff's money"), with Nw. Bank Minn. v. Blair Rd. Assocs., L.P., 252 F. Supp. 2d 86, 96 (D.N.J. 2003) (holding that prepayment charge was not interest "because it is not compensation for the use of money but a charge for the option or privilege of prepayment"). The Court need not resolve this issue here, because the Note's other default provisions likely constitute an unenforceable penalty.

The Note's call for a default interest rate 14% higher than the regular rate, with the amount owed multiplied by 150%, is likely unreasonable and therefore unenforceable. Sophisticated parties executed the contract and therefore, the default interest rate is presumptively reasonable. Nevertheless, rate increases between 8% and 15% have been held unreasonable, and in those cases the loan agreements did not call for multiplying the total amount due by an additional 150%. See Spiotta, 179 A.2d at 53; Feller, 148 A.2d at 639. Therefore, the default interest rate sought here is likely unenforceable as a matter of law. However, given that the parties have not yet presented evidence on the relevant factors under New Jersey law, the Court defers determination on that point.

## ORDER

For the foregoing reasons, the Court **DENIES** without prejudice Plaintiff's motion for judgment on the pleadings (Docket No. 14). If the parties are unable to agree on a settlement interest rate, they shall, within 14 days of entry of this Order, submit briefing regarding the amount and enforceability of the effective interest rate under New Jersey law in light of the Note's provisions as outlined above.
SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
United States District Judge